

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HERBERT WHITE AND JAMES HAYES, *on behalf*
*of themselves and all other similarly situated,*

    Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Serve: David N. Anthony
       Troutman Sanders LLP
       1001 Haxall Point
       Richmond VA, 23219

    Defendant.

Civil Action No. 3:16cv310

## CLASS ACTION COMPLAINT

The Plaintiffs, Herbert White and James Hayes (hereafter "Plaintiffs"), by counsel, on behalf of themselves and all similarly situated individuals, allege as follows:

### PRELIMINARY STATEMENT

1. This is a consumer class action brought for willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Defendant Experian Information Solutions, Inc. ("Experian").

2. Plaintiffs allege class claims under 15 U.S.C. § 1681g(a) because Experian deliberately conceals the sources of information that it reports about consumers at the direction of its paying customers. In this instance, Experian consistently identified "Delbert Services/Consumer Loan Trust" as the sole source of the information in Plaintiffs' credit reports despite Experian's unquestionable knowledge that it was CashCall—and no one else—who supplied the underlying information to Experian. Experian not only concealed CashCall's role in

the process in violation of § 1681g(a)(2), but Experian also misrepresented (at the request of CashCall) that "Consumer Loan Trust" was a source of the information even though never furnished any information to Experian.

3. Plaintiffs further allege that Experian violated §§ 1681g(a)(1) and 1681g(a)(3) because Experian falsely represented that it furnished Plaintiff White and the class members' reports to Western Sky when, in reality, these reports were furnished to CashCall.

4. Plaintiff White further allege individual claims against Experian pursuant to § 1681i because after Plaintiffs disputed the accuracy of the information *purportedly* reported by Delbert Services/Consumer Loan Trust, Experian failed to conduct a reasonable investigation and continued to report the inaccurate information in his credit reports in accordance with the secret instructions from CashCall. Plaintiff White also alleges an individual claim against Experian because it combined and mixed the credit file of Plaintiff with another person.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Plaintiff Hayes is a resident of the Richmond Division and Experian regularly conducts business in this Division.

## PARTIES

9. Each Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions Inc. ("Experian") is a foreign corporation doing business in Virginia. At all times relevant to this complaint, it was a "consumer reporting agency" as defined by the FCRA at 15.U.S.C. § 1681a(f).

# FACTS

## *Statutory Framework and Experian's Recidivist Conduct*

11. In enacting the relevant FCRA provision, Congress unambiguously required credit-reporting agencies, such as Experian, to "clearly and accurately disclose to the consumer" who requests his or her credit file "all of the information in the consumer's file at the time of the request," including the sources of the information. 15 U.S.C. § 1681g(a)(1)-(2).

12. Disclosure of the source of a consumer-reporting agency's information is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

13. Congress this created a consumer's legal entitlement to material information in their credit file – the ability to always know what information was to be in their credit report and who was supplying it.

14. Despite the clear mandate of § 1681g, Experian willingly bends the rules to appease some of its customers and to ensure that those customers use Experian's products, as opposed to its major competitors Equifax and Trans Union.

15. Experian has substantial notice and knowledge that its policy violates the FCRA, but Experian knowingly deprives consumers of this important and mandatory FCRA-governed information.

16. As early as May 30, 2013, this Court put Experian on notice of the inadequacy of its § 1681g policy when the Court explained: "[a]lthough Experian posits that the word 'sources' could have many meanings, in the context of this case and the FCRA, the term clearly embraces CardWorks. Whatever else it might mean, the term 'sources of the information' certainly

includes the entity that gave the information to Experian." *Dreher v. Experian Info. Sols., Inc.*, 2013 WL 2389878, at *5 (E.D. Va. May 30, 2013) (Gibney, J.).

17. In December 2014, granted the plaintiff's motion for summary judgment in *Dreher*, finding Experian willfully violated the FCRA as to the plaintiff and nearly 70,000 consumers. Again, the Court observed: "[a]lthough gifted legal minds can create myriad interpretations for how many sources or what kinds of sources should be included in the disclosure, the term 'sources' clearly includes, at the very least, the entity that gives that information directly to the consumer reporting agency." *Dreher v. Experian Info. Sols., Inc.*, 71 F. Supp. 3d 572, 579-80 (E.D. Va. 2014) (Gibney, J.).

18. In addition to *Dreher*, Experian has been sued repeatedly for failing to clearly and accurately disclose the sources of information it obtains and reports regarding consumers. *See, e.g., Williams v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1102 (E.D. Va.); *Beattie v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1195 (E.D. Va. ); *Clark v. Experian Info. Sols., Inc.*, Case No. 3:16-cv-32 (E.D. Va.); *Scott v. Experian Info. Sols., Inc.*, Case No. 3:14-cv-394 (E.D. Va.).

19. Despite these lawsuits, including a $12 million dollar judgment entered against in *Dreher*, Experian has not significantly modified its procedures to clearly and accurately disclose the sources of information it reports.

20. In fact, upon information and belief, Experian consciously refuses to even adopt a written policy for compliance with § 1681g(a)(2)—a cornerstone provision of the FCRA enacted more than 40 years ago.

21. Experian refuses to meaningfully consider the issue or heed guidance from the district courts for its own financial gain.

### *Overview of CashCall, Delbert Services Corporation and Western Sky*

22. In order to attempt to circumvent state usury, payday lending, and consumer fraud statutes, John Paul Reddam ("Reddam") created several criminal enterprises, including Delbert Services Corporation ("Delbert"), CashCall, Inc. ("CashCall") and WS Funding, LLC ("WS Funding") to market and collect illegal loans.

23. Reddam's scheme was designed to violate the usury and payday lending laws of multiple states, to disguise Reddam and his companies' roles, and to ostensibly shield the scheme from liability through a business structure that attempted to exploit Indian Tribal Sovereign Immunity to "avoid state and federal law and to game the entire system." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016).

24. Although Western Sky held itself out to consumers as the actual lenders of these internet payday loans, CashCall funded these illegal loans purportedly made by Western Sky and, unbeknownst to consumers, was the entity that performed the underwriting requirements.

25. The companies engaged in this deceptive practice in order to evade liability because Westerns Sky held itself out to the public as a standalone tribal entity that was supposedly part of the Cheyenne River Sioux Tribe and, by its assertion, entitled to Native American Tribal Sovereign Immunity.

26. Although Western Sky operated within the boundaries of the Cheyenne River Sioux Reservation, the Sioux Tribe did not have any ownership interest or operating role in Western Sky, nor did it receive any profits from Western Sky.

27. Instead, Western Sky was owned and operated by Martin Webb, who was the sole manager and member of Western Sky.

28. Contrary to the misrepresentations in the Loan Agreement, Western Sky was not an actual lender. As explained by the New Hampshire Department of Banking in 2013, Western Sky was "nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."

29. As explained below, Experian helped facilitate Western Sky and Reddam's deceptive scheme by: (1) misrepresenting to consumers that it furnished reports directly to Western Sky when, in reality, Experian furnished those reports directly to CashCall; (2) failing to disclose CashCall as a source of the information despite Experian's unquestionable knowledge that it was CashCall who supplied the underlying information to Experian; and (3) by disclosing "Consumer Loan Trust" as a source of information even though "Consumer Loan Trust" never furnished any information to Experian.

### *Experian Misrepresents the Roles of Western Sky, CashCall and Delbert*

30. In order to qualify for the internet payday loan, Western Sky *ostensibly* required consumers to electronically sign a loan agreement (the "Loan Agreement").

31. On November 20, 2012, Mr. White applied for a loan with Western Sky and electronically signed a template Loan Agreement.

32. As part of Reddam's deceptive scheme, the Loan Agreement did not reference CashCall and, more importantly, did not authorize Cashcall to obtain Mr. White's credit report.

33. After Mr. White submitted his application on November 20, 2012, he received an e-mail from Western Sky indicating that his application was conditionally approved.

34. Mr. White received another e-mail from Western Sky on November 20, 2012, entitled "Your Credit Score and the Price You Pay for Credit."

35. The "Your Credit Score and the Price You Pay for Credit" email was sent by "do.not.reply@westernsky.com."

36. On November 29, 2012, Mr. White received another email from Western Sky entitled "Notice of Assignment, Sale or Transfer of Servicing Rights." This e-mailed explained "[e]ffective today, your loan is now owned by WS Funding, LLC and will be serviced by a company called CashCall."

37. In May 2014, Mr. White requested a full copy of his file from Experian, who furnished Mr. White with a copy of his consumer disclosure.

38. In this disclosure, unbeknownst to the Plaintiff at the time, Experian falsely represented that it furnished Mr. White's credit report to Western Sky on November 20, 2012.

39. Recently, through discovery produced by Delbert in *Hayes v. Delbert Services Corporation*, Case No. 3:14-cv-258 (JAG), Plaintiff discovered that Experian did not, in fact, provide any report to Western Sky on November 20, 2012.

40. Instead, Experian provided the November 20, 2012 report to CashCall and knowingly misrepresented this fact to help facilitate CashCall's efforts to evade licensure and attempt to exploit Indian Sovereign Immunity.

41. Experian not only misrepresented that it provided Mr. White's report to Western Sky, but it also falsely identified "Delbert Services/Consumer Loan Trust" as a source of certain information in the May 2014 report.

42. Upon information and belief, Delbert Services/Consumer Loan Trust never furnished any information to Experian.

43. Instead, upon information and belief, CashCall provided Experian with all of the information appearing in the Delbert Services/Consumer Loan Trust tradeline, yet Experian concealed this information from consumers.

44. On October 8, 2014, Mr. White mailed a letter to Experian disputing the information purportedly reported by "Delbert Services/Consumer Loan Trust." In his letter, Plaintiff explained that the Defendants' account should be deleted because the loan was null and void in Virginia. To verify the accuracy of his representations, Plaintiff enclosed regulations regarding consumer finance licensing in the Commonwealth of Virginia and a recent complaint against an internet payday lender filed by the Attorney General for the Commonwealth of Virginia showing that similar loans were considered null and void in Virginia.

45. Experian conducted its investigation of Mr. White's dispute by secretly contacting CashCall—not Delbert Services or the Consumer Loan Trust—a clear indication that Experian knowingly concealed this relevant information from Mr. White.

46. More specifically, when Experian received a consumer dispute, Experian usually translates that dispute into an "ACDV" form.

47. Experian then electronically transmits the ACDV to the source of the information through a dispute system named "e-Oscar."

48. As reflected by the ACDV produced involving Delbert, Experian sent the ACDV to CashCall in response to Mr. White's dispute dated October 8, 2014.

49. Nevertheless, Experian continued to falsely represent that "Delbert Services/Consumer Loan Trust" was the source of the information, including in Experian's Investigation Results dated October 29, 2014, where Experian again falsely represented that "Delbert Services/Consumer Loan Trust" provided the information appearing in the account.

50. In March 2016, Mr. White requested a full copy of his file from Experian, who furnished Mr. White with a copy of his consumer disclosure.

51. Again, this disclosure identified Delbert Services/Consumer Loan Trust as a source of the information while at the same time concealing CashCall—the entity who gave the relevant information directly to Experian.

52. At this time, White discovered that Experian reported information belong to Plaintiff's father in his credit report, including an American Express card opened in 1967—the year White was born.

53. Experian included this information in Plaintiff's credit report due to its lax threshold designed to over-include information in consumer reports. Accordingly, White alleges an individual claim against Experian under 15 U.S.C. § 1681e(b) for its failure to reasonably ensure the maximum possible accuracy of his credit reports.

54. Likewise, Mr. Hayes requested a full copy of his file from Experian, who furnished Mr. Hayes with a copy of his consumer disclosure dated April 2, 2016. Again, this disclosure identified Delbert Services/Consumer Loan Trust as a source of the information while at the same time concealing CashCall—the entity who gave the relevant information directly to Experian.

55. As a result of Experian's conduct, Plaintiffs and the putative class members suffered concrete injuries, including informational injuries and invasions of their privacy. For example, Experian deprived Plaintiffs of important information regarding the identity of who the entity who obtained Mr. White and the class member's reports and the entity that actually furnished the information in Plaintiffs and the putative class member's reports.

56. Experian not only deprived Plaintiffs of important information, but Experian also subject Plaintiffs and the class members to increased risk of harm, including the increased risk that Plaintiffs and the class members would continue to pay amounts on these unlawful loans. Experian's conduct also made it more difficult for Plaintiffs and the class members to get these illegal loans removed from their credit reports.

57. Further, the value of the incomplete or partial credit disclosure Experian provided was thus less in some amount than the $12.00 price the FCRA sets as the cost of such disclosure.

## COUNT ONE:
### Violation of 15 U.S.C. § 1681g(a)(2)
### (EXPERIAN)

58. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who requested their consumer file from Experian or any of its affiliated companies, subsidiaries, or any other Experian entity, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom Experian provided a response that included a Delbert Services and/or Consumer Loan Trust tradeline. Excluded from the class definition are any employees, officers, directors of Experian, any attorney appearing in this case, and any judge assigned to hear this action.

60. Upon information and belief, Plaintiffs' counsel estimates that the class is so numerous that joinder of all members is impractical.

61. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Experian failed to send the required information in response to a

consumer's request for a full copy of his or her Experian file; (b.) whether this failure was a result of Experian's standard operating procedure when responding to a consumer's request for a full copy of his or her credit file; (c.) whether Experian's conduct constituted a violation of the FCRA; (d.) whether Experian's conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

62. Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. Experian's response to a consumer's request for a full copy of his or her consumer file routinely failed to disclose CashCall as the source of the information during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

63. The Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

64. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

65. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Experian has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

66. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Experian's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

67. Experian violated § 1681g(a)(2) of the FCRA by: (1) failing to clearly and accurately disclose CashCall as the source of the information reported in the Delbert Services/Consumer Loan Trust tradeline; and/or (2) by misrepresenting that Consumer Loan Trust was a source of the information even though Consumer Loan Trust did not exist and never provided any information to Experian.

68. Each Plaintiff and putative class member suffered real and actual injury. They were denied important information that was to have been part of their consumer disclosure

otherwise to be provided upon request. The amount of money and lost value is somewhere between $0.01 and $21.95, but in each instance less than the statutory damages floor of $100.00.

69. Experian is permitted to charge up to $12.00 for a consumer disclosure. However, it in fact uses its confusing website and marketing campaign ("FreeCreditReport.Com") to direct consumers to a product for which it charges at least $21.95 per month. In fact, it does this to direct consumers away from the one actually free option they have – AnnualCreditReport.com.

70. Nevertheless, whether a plaintiff or putative class member managed to obtain their one free annual credit disclosure or instead paid for it, the value of that report is still set at $12.00.

71. Because the consumer disclosures Experian provided did not include all of the information Experian was obligated to include in them, they were worth some amount less.

72. Additionally, by example only and without imitations, the rights at issue were determined by Congress to be important measures of Experian's process to ensure continued accuracy and completeness in its files and reports.

73. The conduct, action, and inaction of Experian was willful, rendering Experian liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling class members to the $12.00 value of a complete credit disclosure.

74. Plaintiffs and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was

negligent entitling the Plaintiffs and the class to actual damages in the amount of the value of their consumer file.

75. As a result of these FCRA violations, Experian is liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages in the amount of $12.00, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

### COUNT TWO:
### Violation of 15 U.S.C. §§ 1681g(a)(1) and 1681g(a)(3)
### (EXPERIAN)

76. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

77. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. White bring this action for himself and on behalf of a class defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who requested their consumer file from Experian or any of its affiliated companies, subsidiaries, or any other Experian entity, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom Experian provided a response that included an inquiry from Western Sky. Excluded from the class definition are any employees, officers, directors of Experian, any attorney appearing in this case, and any judge assigned to hear this action.

Mr. White is a member of this class.

78. Upon information and belief, Plaintiffs' counsel estimates that the class is so numerous that joinder of all members is impractical.

79. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Experian failed disclose all of the information in consumers' files and/or

whether Experian misrepresented Western Sky's role in response to a consumer's request for a full copy of his or her Experian file; (b.) whether this failure was a result of Experian's standard operating procedure when responding to a consumer's request for a full copy of his or her credit file; (c.) whether Experian's conduct constituted a violation of the FCRA; (d.) whether Experian's conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

80. Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. Experian's response to a consumer's request for a full copy of his or her consumer file routinely failed to include the source of the public records information that it reported about consumers during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

81. The Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

82. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

83. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Experian has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

84. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Experian's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

85. Experian violated §§ 1681g(a)(1) and 1681g(a)(3) by falsely representing, in response to their disclosure requests, that Experian furnished Plaintiff White and the class members' reports to Western Sky when those reports were furnished to CashCall.

86. Each Plaintiff and putative class member suffered real and actual injury. They were denied important information that was to have been part of their consumer disclosure otherwise to be provided upon request.

87. Experian is permitted to charge up to $12.00 for a consumer disclosure. However, it in fact uses its confusing website and marketing campaign ("FreeCreditReport.Com") to direct consumers to a product for which it charges at least $21.95 per month. In fact, it does this to direct consumers away from the one actually free option they have – AnnualCreditReport.com.

88. Nevertheless, whether a plaintiff or putative class member managed to obtain their one free annual credit disclosure or instead paid for it, the value of that report is still set at $12.00.

89. Because the consumer disclosures Experian provided did not include all of the information Experian was obligated to include in them, they were worth some amount less.

90. Additionally, by example only and without imitations, the rights at issue were determined by Congress to be important measures of Experian's process to ensure continued accuracy and completeness in its files and reports.

91. The conduct, action, and inaction of Experian was willful, rendering Experian liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling class members to the $12.00 value of a complete credit disclosure.

92. Plaintiffs and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was

negligent entitling the Plaintiffs and the class to actual damages in the amount of the value of their consumer file.

93. As a result of these FCRA violations, Experian is liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages in the amount of $12.00, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### (INDIVIDUAL CLAIM)

94. Mr. White incorporates all other factual allegations set forth in the Complaint.

95. Experian violated multiple sections of § 1681i as to Mr. White, including but not limited to its conduct of: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Mr. White in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Mr. White's credit files or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed inaccurate items of information from Mr. White's credit files or modify the item of information upon a lawful reinvestigation in violation of §1681i(a)(5)(A).

96. As a result of Experian's violations of §1681i, Mr. White suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

97. The violations by Experian were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to § 1681n. In the alternative, Experian was negligent, which entitles Plaintiffs to recovery under 15 U.S.C. §1681o.

98. Mr. White is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (INDIVIDUAL CLAIM)

99. Mr. White restates each of the allegations in the preceding paragraphs as if set forth at length herein.

100. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

101. As a result of this alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

102. Experian's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

103. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Herbert White and James Hayes request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendant for: (1) certification for this matter to proceed as a class action under Rule 23; (2) for actual damages of $12.00 per report disclosed, statutory and punitive damages, declaratory and injunctive relief as pled herein; (3) for attorneys' litigation expenses and costs of suit; and (4) such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**HERBERT WHITE & JAMES HAYES**
By Counsel

_/s/_

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, VSB#82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard A. Bennett, VSB #37523
Susan M. Rotkis, VSB #40639
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
(757) 930-3660
(757) 930-3662 Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiffs*